UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

AMANDA F. SMITH                                          CIVIL ACTION

VERSUS                                                   NO: 11-499

SPRINT/UNITED MANAGEMENT                                 SECTION: "A" (3)
COMPANY, ET AL.

## ORDER AND REASONS

This is an employment discrimination action filed by Plaintiff Amanda F. Smith against her former employer, Defendant Sprint/United Management Company ("Sprint"). Smith alleges that Sprint discriminated against her on the basis of her pregnancy when it terminated her employment. Plaintiff's claim arises under Title VII, as amended by the Pregnancy Discrimination Act (PDA), 42 U.S.C. § 2000e(k), 42 U.S.C. § 2000e–2(a)(1), and the Louisiana Employment Discrimination Law (LEDL), Louisiana Revised Statutes § 23:301, *et seq*.

Defendant filed a motion for summary judgment **(Rec. Doc. 51)** in which it contends that Plaintiff cannot establish a *prima facie* case of pregnancy discrimination. Defendant also argues that, even if Plaintiff could establish a *prima facie* case, she has no evidence to rebut Defendant's legitimate, nondiscriminatory reasons for firing her. Plaintiff opposes the motion for summary judgment **(Rec. Doc. 58)**. Having considered the complaint, the record, the submissions of the parties and the applicable law, IT IS ORDERED that Defendant's motion for summary judgment is **GRANTED** for the following reasons.

**I.      FACTUAL BACKGROUND**

The competent summary judgment evidence establishes the following undisputed material

1

facts. Plaintiff Amanda Smith began working as a sales associate at Sprint's retail store in Slidell, Louisiana in October 2006. On February 4, 2009, Angelle Ducros, former store manager for the Slidell retail store, issued Plaintiff a verbal warning for failure to meet her performance goals in handset sales, accessory sales, and customer satisfaction for the month of January 2009. In February 2009, Plaintiff received a warning for tardiness.

In April 2009, Roger Braud became the store manager for the Slidell store where Plaintiff was employed. Shortly thereafter, Plaintiff discovered that she was pregnant, and informed Braud of her pregnancy. In May 2009, Braud gave Plaintiff a verbal warning for failure to meet her performance goals in handset sales for the month of April 2009. Plaintiff did not receive a written warning because her previous verbal warning from Ducros had expired under the terms of Defendant's disciplinary policy. In June 2009, Braud gave Plaintiff a written warning for failing to meet her performance goals in customer satisfaction and handset sales for the month of May 2009. Plaintiff then met her performance goals for the month of June 2009 and did not receive any further disciplinary action for several months.

However, in October 2009, Braud gave Plaintiff a final written warning for failure to meet performance goals in customer satisfaction, handset sales, accessory sales, and account set-up for September 2009. Braud subsequently reviewed Plaintiff's performance for the month of October 2009, and found that Plaintiff had again failed to meet her performance goals in customer satisfaction, new activations, and accessory sales. As a result of Plaintiff's failure to meet her performance goals and the fact that Plaintiff had already received a final written warning, the appropriate level of corrective action under Defendant's policies was termination of Plaintiff's employment.

2

Before terminating Plaintiff's employment, Braud consulted with District Manager Charles Acosta to discuss the proposed action. Acosta concurred in Braud's decision to terminate Plaintiff. On November 9, 2009, Braud informed Plaintiff that her employment with Sprint was terminated because she had failed to meet her performance goals while on final written warning.

## II. STANDARD OF REVIEW

"A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the initial burden of identifying those materials in the record that it believes demonstrate the absence of a genuinely disputed material fact, but it is not required to negate elements of the nonmoving party's case. Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to [a particular material] fact." Advisory Committee Notes, at 261.

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). No genuine dispute of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must cite to particular evidence in the record to support the essential elements of its

claim. Id. (citing Celotex, 477 U.S. at 321–23); accord U.S. ex rel. Patton v. Shaw Servs., L.L.C., 418 F. App'x 366, 371 (5th Cir. 2011). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex, 477 U.S. at 323; accord U.S. ex rel. Patton, 418 F. App'x at 371.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original). "Conclusory allegations unsupported by specific facts ... will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations ... to get to a jury without any "significant probative evidence tending to support the complaint."'" Nat'l Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); accord Duron v. Albertson's LLC, 560 F.3d 288, 291 (5th Cir. 2009).

## III. ANALYSIS

Defendant argues that Plaintiff cannot make out a *prima facie* case of pregnancy discrimination under either Title VII or the LEDL, to whatever extent Plaintiff may be asserting a

4

claim under that state law.[1]  Defendant alternatively argues that, even if Plaintiff can establish a *prima facie* case, she has no evidence to rebut its legitimate nondiscriminatory reasons for firing her.

The PDA, which amended Title VII, prohibits employers from discriminating against a female employee "because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work."  42 U.S.C. § 2000e(k).

The PDA "has been interpreted to provide equal treatment for pregnant women, not preferential treatment."  Taylor v. Jotun Paints, Inc., No. 09–3801, 2010 WL 3720435, at *5 (E.D.La. Sept. 15, 2010) (Engelhardt, J.) (citing Urbano v. Cont'l Airlines, Inc., 138 F.3d 204, 206 (5th Cir. 1998)).  Thus, the statute does not require an employer to overlook deficiencies in a pregnant employee's job performance, even if those deficiencies are caused by the pregnancy, unless the employer overlooks comparable deficiencies in the performance of non-pregnant employees. Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003); Stout v. Baxter Healthcare Corp., 282 F.3d 856, 859–60 (5th Cir. 2002) (citing Dormeyer v. Comerica Bank–Ill., 223 F.3d 579, 583 (7th Cir.

---

[1] Plaintiff's Petition for Damages, originally filed in Louisiana state court and removed to this court, stated Title VIII and "applicable state law" as the legal basis for her claim. "Louisiana courts and federal courts applying Louisiana law have routinely looked to federal jurisprudence to interpret Louisiana employment discrimination statutes."  Smith v. Amedisys Inc., 298 F.3d 434, 448 (5th Cir. 2002) (citing Nichols v. Lewis Grocer, 138 F.3d 563, 566 (5th Cir. 1998); King v. Phelps Dunbar, L.L.P., 743 So.2d 181, 187 (La. 1999)); accord George v. Home Depot Inc., 51 F. App'x 482, 2002 WL 31319124, at *2 (5th Cir. Sept. 27, 2002) (citing Nichols, 138 F.3d at 566; Hicks v. Cent. La. Elec. Co., 712 So.2d 656, 658 (La.App. 1st Cir. 1998)); LaBove v. Raftery, 802 So.2d 566, 573 (La. 2001).  This includes claims of pregnancy discrimination brought under Louisiana law.  Suire v. LCS Corr. Servs., Inc., 930 So.2d 221, 225 (La.App. 3d Cir. 2006) (citing La.Rev.Stat. § 23:342; Brittain v. Family Care Serv., Inc., 801 So.2d 457, 460–61 (La.App.2d Cir. 2001)).  Therefore, analysis of plaintiff's claim under state law mirrors the analysis under federal law.

2000)); Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 223 (5th Cir. 2001).

The Court analyzes a PDA "claim in the same way that we analyze a Title VII discrimination claim. A plaintiff can prove pregnancy-based discrimination either by direct or circumstantial evidence." McLaughlin v. W & T Offshore, Inc., 78 F. App'x 334, 337 (5th Cir. 2003) (citing Urbano v. Cont'l Airlines, Inc., 138 F.3d 204, 206 (5th Cir. 1998)); accord Willis v. Coca Cola Enters., Inc., 445 F.3d 413, 420 (5th Cir. 2006); Laxton, 333 F.3d at 578.[2] When a plaintiff relies on circumstantial evidence to prove pregnancy discrimination, her claim is analyzed under the McDonnell Douglas framework. Willis, 445 F.3d at 420 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)); Stout, 282 F.3d at 859–60. Under this framework, the plaintiff must first create a presumption of discrimination by making out a *prima facie* case of discrimination. The burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for the plaintiff's termination. Adcock v. Sunquest Properties, Inc., 2009 WL 2878018 at *3 (W.D.La., Sept. 4, 2009)(citing McDonnell Douglas, 411 U.S. at 802). This causes the presumption of discrimination to dissipate. Id. The plaintiff then bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against her because of her protected status. Id.

To carry this burden, the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination. The plaintiff must rebut each nondiscriminatory reason articulated by the employer. Laxton, 333 F.3d at 578 (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000))

---

[2] Plaintiff does not assert that she can provide direct evidence of discrimination, and relies solely on circumstantial evidence.

(additional citations omitted). A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or "unworthy of credence." Id. An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action. Id.

### A. Plaintiff Cannot Establish a *Prima Facie* Case

To establish a *prima facie* case of pregnancy discrimination with circumstantial evidence, plaintiff must show that "(1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) others not in the protected class who are similarly situated were more favorably treated." Mascorro v. Am. Funds Serv. Co., No. CIV.A.SA05CA590–FB, 2006 WL 3782861, at *2 (W.D.Tex. Nov. 20, 2006) (citing Urbano, 138 F.3d at 206); accord Laxton, 333 F.3d at 578. For purposes of its summary judgment motion, Defendant does not dispute that Plaintiff can establish the first three elements. However, Defendant argues that Plaintiff cannot satisfy the fourth prong because she has no evidence that non-pregnant employees who were similarly situated to Plaintiff were treated more favorably than she.

To establish the fourth prong, Plaintiff "must demonstrate that the misconduct for which she was discharged was nearly identical to that engaged in by a[n] employee [not within her protected class] whom [the company] retained." Wallace, 271 F.3d at 221 (quotation, brackets and citations omitted). "In work-rule violation cases, a Title VII plaintiff may establish a *prima facie* case by showing 'either that [s]he did not violate the rule or that, if [s]he did, ... employees [outside plaintiff's protected class] who engaged in similar acts were not punished similarly.'" Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995).

Plaintiff has admitted in deposition that each of the warnings that she received from Braud

7

were merited; she did in fact fail to meet her performance goals on several occasions prior to her termination. Smith Depo., pp. 55-56, 58-59, 65-66, 68, 76. In addition, Plaintiff has been unable to identify any similarly situated, non-pregnant employee who was not terminated when the other employee performed deficiently or violated a company policy while under an active final written warning. Smith stated in her deposition that she believed that two other non-pregnant employees, Lindsay Martin and Debra Allen, were on a final written warning at the time she was terminated. She testified that she believed that neither of the non-pregnant employees had met their performance goals for the month of October 2009, and that neither of them were discharged.[3]

Plaintiff admitted that she has no accurate personal knowledge of her co-workers' performance for the month of October 2009.[4] She bases her assertions of differential treatment primarily on data which she obtained from Sprint's "MyMetrics" system shortly after her termination. MyMetrics is a performance management tool which was launched in July 2009 and is currently used by Sprint to evaluate employee performance. Noelle Decl., p. 1. When Defendant

---

[3] Martin was fired three months after Plaintiff for failing to meet her performance goals and Allen resigned from Sprint approximately one month after Plaintiff's termination. Braud Decl., p. 1.

[4] A: ...They wrote our numbers on the board in the back room of the Sprint store...
Q: And you recall that Lindsey Martin did not meet her numbers?
A: Correct.
Q: For what categories?
A. Um, I don't remember.
...
Q. So the only information you based your belief that Ms. Martin did not meet her numbers in the month of October on is the information set forth in [the MyMetrics printout from October 2009], correct?
A. Right; and from my recollection of what was on the board in the back.
From Smith Depo., pp. 95-96.

initially launched MyMetrics, there was a 90-day period in which it trained management on how to use the tool. Id. At the end of the training period, it was apparent that there were discrepancies between the employee performance data recorded on MyMetrics and the actual performance of Sprint store employees; for this reason, Sprint did not initially approve the use of MyMetrics as part of the corrective action process. Id. In fact, according to Defendant's evidence, Sprint did not permit the use of MyMetrics as a corrective action tool until July 2010, long after the date of Plaintiff's termination. Id. Braud testified that he did not personally rely on data obtained from the MyMetrics system in his personnel decisions "until about January 2011." Braud Decl., p. 1. Thus, according to Defendant, Braud did not rely on the MyMetrics data in reaching his employment decisions related to Plaintiff.

In addition, there is evidence that at least three other Sprint employees were pregnant while Plaintiff was employed and did not suffer any adverse employment actions. Former Sprint employee Tashonnie Lundie left work on Short Term Disability/FMLA leave starting on July 20, 2009. She returned to work at Sprint one week prior to Plaintiff's discharge, and was promoted from retail consultant to lead retail consultant three months later. Jennifer Woodside, who worked as Assistant Manager at the Slidell store, was pregnant at the time Braud became store manager at that location. She went on maternity leave in May 2010 and returned to work in August 2010. Tiffany Miller was pregnant and supervised by Braud at the same time as Plaintiff, and testified that she did not feel treated unfairly because of her pregnancy; on the contrary, she considered herself a "protégé" of Braud. Miller Depo., p. 56.

The Court concludes that there are no genuine issues of material fact regarding whether others not in the protected class who were similarly situated were more favorably treated than

9

Plaintiff; the record is devoid of any credible evidence that Plaintiff was treated differently than any other employee who failed to perform his or her job duties as required. Because Plaintiff has failed to come forward with evidence to create an issue of fact with respect to the fourth element of her *prima facie* case, Defendant is entitled to summary judgment in its favor as a matter of law.

B. <u>Plaintiff Cannot Rebut Defendant's Legitimate Nondiscriminatory Reasons</u>

Even assuming, without deciding, that Plaintiff could establish a *prima facie* case of pregnancy discrimination, Defendant has produced legitimate nondiscriminatory reasons for firing her. As of October 2009, Plaintiff was under a final written warning based on her record of failing to meet performance goals during the months of April 2009 and May 2009. Plaintiff does not dispute that she was properly warned under Sprint's progressive disciplinary policy; she further testified that the next step after a final written warning in Sprint's policy was termination of employment. Smith Depo., pp. 55-56, 58-59, 65-66, 68, 76.

Plaintiff's admissions are more than sufficient to demonstrate that Defendant had legitimate, nondiscriminatory reasons for her termination. Thus, any presumption of discrimination that would exist if Plaintiff were able to establish a *prima facie* dissipates and she bears the burden to show that a genuine issue of material fact exists as to whether (1) Defendant's proffered reason is pretext for discrimination, or (2) Defendant's proferred reason, while true, is only one of the reasons for its conduct, and another motivating factor was the plaintiff's pregnancy. See <u>Keelan v. Majesco Software, Inc</u>. 407 F.3d 332, 341 (5th Cir. 2005); see also <u>Baker v. Am. Airlines, Inc</u>., 430 F.3d 750, 754 (5th Cir. 2005)("[Because Defendant] has articulated a nondiscriminatory reason for its employment action, the next step of the analysis returns the burden to [Plaintiff]. Moreover, this burden is one of

persuasion, not merely production of evidence.")

      C.      <u>Pretext/mixed motive</u>

The Court finds that Plaintiff's evidence fails to establish a triable genuine issue of fact as to whether Defendant's proffered reasons were pretextual. The record contains only two instances in which Braud referenced Plaintiff's pregnancy. First, according to Plaintiff's testimony, Braud told Plaintiff at that her "shirt [was] getting too tight; and [that] he would bring shirts from his house." Smith Depo., p. 22. Plaintiff estimated that she was about five or six months pregnant at the time Braud made the alleged comment, and that the conversation took place approximately four months before she was fired.

The second recorded instance when Braud mentioned Plaintiff's pregnancy is contained in the testimony of Tiffany Miller, a former Sprint employee who worked at the Slidell store at the same time as Plaintiff. Miller testified that Plaintiff had asked Braud for a chair; Braud then told Miller "something, like: 'She's sitting down'; or: 'She's milking this pregnancy'; or: 'You don't need a chair, so I don't think she should need a chair....'" Miller Depo., p. 49. However, Miller could not recall other specific examples of Braud criticizing Plaintiff. Miller testified that Braud compared Miller to Smith and said "basically, that [Miller] was fine, [she] was working, [she] wasn't complaining about [her] pregnancy." Miller Depo., p. 50.

Under Fifth Circuit law, in order for comments in the workplace to provide sufficient evidence of discrimination, they must be (1) related to the protected class of persons of which the plaintiff is a member, (2) proximate in time to the complained-of adverse employment decision, (3) made by an individual with authority, and (4) related to the employment decision at issue. <u>Adcock</u>, 2009 WL 2878018 at *6 (citing <u>Jenkins v. Methodist Hosp. of Dallas, Inc</u>., 479 F.3d 255, 261 (5th

Cir. 2007); Patel v. Midland Mem'l Hosp. & Med. Ctr., 298 F.3d 333, 343-44 (5th Cir. 2002)). Specific comments made over a lengthy period of time are sufficient. But "[w]here comments are vague and remote in time, they are insufficient to establish discrimination." Id. (citing Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 222 (5th Cir. 2001)(internal citations omitted)).

Under this test, neither comment at issue is sufficient evidence of discrimination. In regard to the first comment concerning Plaintiff's shirt, Plaintiff testified that Braud made the comment about four months prior to her termination. The comment was therefore not "proximate in time" to her firing, although it was arguably "related to" her termination. With respect to the second comment or series of comments comparing Miller to Smith, the court finds Miller's testimony to be so vague and non-specific that it is insufficient to demonstrate any discriminatory intent on the part of Braud. Plaintiff's mere subjective belief is simply insufficient to demonstrate pretext or to create a genuine issue of material fact as to whether her pregnancy was a motivating factor in her termination. See Adcock, 2009 WL 2878018 at *6 (citing Phillips v. Credit Lyonnais, 2002 WL 1575412 (N.D.Tex.2002) (supervisor's alleged comment close to time of pregnant employee's termination was insufficient to show that employer's proffered reason for termination - substandard work performance - was pretextual, especially considering overwhelming evidence of poor performance)).

In addition, the Court finds that Miller's testimony undercuts Plaintiff's argument that Defendant's proffered reason for her termination was mere pretext or that her pregnancy was a motivating factor. Miller, who was pregnant and employed at the Slidell store during the same period Plaintiff was pregnant and working there, testified that she had a good working relationship with Braud during her pregnancy. She testified that Braud did not treat her unfairly because of her

pregnancy; to the contrary, she considered herself "kind of like [Braud's] go-to fix-it person." Miller Depo., p. 56. Miller's testimony supports Defendant's argument that Braud did not discriminate against Smith based on her pregnancy, but was merely dissatisfied with her work performance.

Plaintiff's failure to meet clearly outlined performance goals after a verbal, written, and final written warning constitute a legitimate nondiscriminatory reason to fire her, and Plaintiff has pointed to no record evidence to create a genuine fact issue that Defendant's reasons for terminating her employment were false or unworthy of belief. No inference can be drawn that defendant discriminated against her based on her pregnancy.

### IV. CONCLUSION

The Court finds that Plaintiff has failed to create a presumption of discrimination by making out a *prima facie* case of discrimination. Specifically, she has failed to establish that others similarly situated were more favorably treated. Moreover, even if the Court were to assume that Plaintiff could establish a *prima facie* case of discrimination, she has failed to offer sufficient evidence to show a genuine issue of material exists as to whether Defendant's legitimate, nondiscriminatory reason was pretext or whether her pregnancy was a motivating factor in her termination. Accordingly, Defendant is entitled to judgment in its favor as a matter of law.

For the foregoing reasons, **IT IS ORDERED** that Defendant's motion for summary judgment is **GRANTED** and that Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

This 11th of June.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE